**DAVID H. ANGELI**, OSB No. 020244
david@angelilaw.com
**MICHELLE KERIN**, OSB No. 965278
michelle@angelilaw.com
**AMY E. POTTER**, OSB No. 231794
amy@angelilaw.com
**AMANDA A. THIBEAULT**, OSB No.132913
amanda@angelilaw.com
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

*Attorneys for Defendant Ricky Lane Snodgrass*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF OREGON<br><br>vs.<br><br>RICKY LANE SNODGRASS<br><br>Defendant. | Case No. 6:24-cr-00100-HL-1<br><br>**DECLARATION OF SALLY CHRISTENSEN IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |

I, SALLY CHRISTENSEN, declare:

1.      I have worked for the United States Forest Service (the "Forest Service") since 2005. The Forest Service, an agency of the United States Department of Agriculture, manages over 190 million acres of land in the United States. The Malheur National Forest encompasses approximately 1.7 million of those acres and is divided into three districts; each district has a District Ranger who manages it. The District Rangers report to the Forest Supervisor. Since July 2022, I have held the position of District Ranger of the Blue Mountain Ranger District of the

Malheur National Forest. In October 2022, Craig Trulock held the position of Forest Supervisor and I reported to him.

2.    The process to create, approve, and implement a prescribed burn is a rigorous process with multiple levels of reviews. The overall direction is provided to the wildland fire management program by the Malheur National Forest Land and Resource Management Plan. These plans serve as the document to initiate, analyze, and provide the basis for using prescribed fire to meet resource management objectives. The proposal for site-specific prescribed burns begins during the planning process which incorporates a multi-disciplinary team. All project decisions to use prescribed fire are subject to the agency's analysis, documentation, and disclosure requirements for complying with the National Environmental Policy Act ("NEPA").[1]

3.    After the NEPA analysis and a decision is signed, a burn plan is prepared that incorporates the objectives and any constraints identified during the NEPA analysis. Burn plans identify—or prescribe—the best conditions under which vegetation would burn to meet objectives in a safe manner. Burn plans consider a variety of important factors specific to the area including weather, fuel moistures, topography, the type of fuel present in the burn area (unit), required staffing, complexity analysis, and other conditions. These conditions are run through various computer models to provide appropriate parameters for a prescribed burn at the specific location. A prescribed burn plan preparer is a burn boss, which may include a trainee, who initially prepares the burn plan in accordance with agency policy, direction, and the NEPA decision document. The burn plan preparation must be overseen, recommended, and signed by a qualified burn boss at the appropriate complexity level. After a qualified burn boss signs a burn

---

[1] Prescribed burns in the Starr RX Unit 6, the area where the prescribed burn at issue here occurred, were part of the proposed action analyzed in the Starr Environmental Assessment (EA) and the Decision Notice was signed in 2012.

DECLARATION OF SALLY CHRISTENSEN IN SUPPORT OF                    Page **2** of **7**
DEFENDANT'S MOTION TO DISMISS

plan, the plan goes through a second level review, known as the technical review, which is completed by experienced personnel who must also qualify as an equal or higher-level burn boss. Burn plans may, but are not required to, undergo an additional review if desired.[2] After all reviews are completed, the plan is then submitted for final review to the Forest Service Agency Administrator. If the Forest Service Agency Administrator determines that the burn plan meets the appropriate criteria, the burn plan is approved.

4.      The October 19, 2022, prescribed burn at issue here occurred at the Starr RX area of the Blue Mountain Ranger District and specifically in Unit 6. The prescribed burn was authorized and conducted pursuant to Forest Service regulations and as described above, a heavily reviewed and implemented burn plan. The Prescribed Fire Burn Plan for the Starr RX is attached to this Declaration as Exhibit 1 (the "Burn Plan").[3] The Burn Plan contains all the information required by Forest Service policy and regulations and was duly approved and signed by the Forest Supervisor, and qualified Agency Administrator, Craig Trulock on September 13, 2019.[4] The Burn Plan went through an additional review in 2022 prior to implementation as required by Forest Service policy following the National Prescribed Fire Program Review and operational 90 day pause. The Forest Supervisor, Craig Trulock, signed "Element 1" from

---

[2] The Starr burn plan, described in paragraph 4, included this additional level of review by the Fire Management Officer (FMO) who, after review, recommended that the plan be authorized.

[3] The Burn Plan include Appendices A-G. These Appendices are each marked as Exhibit 1 plus its corresponding letter. For example, Appendix A is marked as Exhibit 1A, Appendix B is marked as Exhibit 1B, and so on.

[4] Before implementation, the Burn Plan underwent Fire Management Officer (FMO) review—an additional level of review by a Forest Service expert not required by regulation or policy. The FMO recommended implementation to the Agency Administrator.

DECLARATION OF SALLY CHRISTENSEN IN SUPPORT OF                    Page **3** of **7**
DEFENDANT'S MOTION TO DISMISS

"Appendix B: Post-Pause Forest Service Prescribed Fire Plan Quality Assurance Checklist" on October 13, 2022.

5. Prior to implementation, Forest Service policy requires the completion of an Agency Administrator Ignition Authorization (known as "2A"). The Ignition Authorization process requires a meeting within the 24 hours before a prescribed burn occurs where Forest Service management and burn team leaders engage in a robust discussion of the operational plan and critical elements of the burn plan. This includes, among other things, consideration of current weather forecast, drought impact, fuel density, and staffing requirements to ensure that the appropriate conditions will be present at the time of the prescribed burn and that the objectives of the burn plan could be safely met. Forest Service policy further requires that following this discussion, the qualified burn boss and qualified Fire Management Officer or Duty Officer affirmatively recommend proceeding with the prescribed burn and that, once recommended, the Agency Administrator decides whether to authorize ignition of the burn. If the local line officer is not the qualified Agency Administrator, they may also sign as concurrence with the plan. The prescribed burn cannot go forward without these signed recommendations and ignition authorization.

6. On the morning of October 19, 2022, I attended the Agency Administrator Ignition Authorization Meeting. The required personnel were present as well as several other Forest Service personnel. We discussed the key issues required by Forest Service policy. Following the discussion, the FMO, the Qualified Burn Boss, Rick Snodgrass, and the Burn Boss Trainee, recommended that the Agency Administrator approve implementation of the prescribed burn. The ignition authorization for the Starr 6 prescribed burn was authorized by Forest Supervisor, and qualified Agency Administrator, Craig Trulock; I concurred with that

authorization as the local line officer. A copy of the signed 2A ignition authorization detailing the key discussion items is in Exhibit 1 at pages 3-4.

7.      Once the prescribed burn is approved at the Agency Administrator Ignition Authorization Meeting, and before the burn occurs, the burn boss compares conditions on the ground to those authorized in the burn plan and discussed in the meeting, memorializing the results in a Prescribed Fire Go/No-Go Checklist (the "Checklist"). The results of the test fire and confirmation of conditions are relayed to the prescribed burn team, including Forest Service management, and if the conditions are consistent with the burn plan and objectives can be successfully met, the fire may proceed. If the conditions are not consistent, the burn cannot go forward without additional discussion and approval by the Agency Administrator.

8.      In this case, Burn Boss Snodgrass and the Burn Boss Trainee, oversaw the required items, reported the results through dispatch, memorialized the results on the Checklist, and determined that all of the conditions had been met to safely proceed with the prescribed burn. A copy of the final Checklist for the October 19, 2022, prescribed burn, signed by Burn Boss Snodgrass and the Burn Boss Trainee, is in Exhibit 1 at pages 5-6.

9.      Once the burn begins, there is extensive monitoring of weather and conditions. The burn boss works with other qualified staff who also hold leadership positions during the operation. Other key personnel include the Firing Boss, who manages the crew that ignites the fire, and the Holding Boss, who oversees the crew that staffs and monitors the control lines. There are also contingency crews available to respond if the fire spots or other emergent issues arise.

10.     Once ignited, the October 19, 2022, prescribed burn progressed as anticipated, consistent with the Burn Plan, and was achieving desired objectives through much of the

DECLARATION OF SALLY CHRISTENSEN IN SUPPORT OF                    Page **5** of **7**
DEFENDANT'S MOTION TO DISMISS

morning and early afternoon. Late in the afternoon, however, there was a sudden and unexpected wind shift that caused the fire to spot over onto private land. The prescribed burn team, and others, immediately shifted their efforts to full suppression of the spot fire to provide for public safety and contain the fire as soon as possible to limit any possible damages. In total, it burned approximately eighteen private acres before federal, state, and contract firefighters were able to get it controlled within an hour and then ultimately fully extinguished. No people or livestock were injured; damage did occur to trees located on the private property.

11.    Shortly after the fire spotted on to private land and during the active suppression efforts, the Grant County Sheriff handcuffed, arrested, and removed Burn Boss Snodgrass during an emergent situation. This action removed Snodgrass, the leader of the prescribed burn, from the crew during the active effort to suppress the spot fire.

12.    I understand that in this case the State claims Burn Boss Snodgrass acted recklessly in authorizing the prescribed burn on October 19, 2022. I disagree with the State's charges against Burn Boss Snodgrass on multiple levels. As described above, Burn Boss Snodgrass did not independently authorize the prescribed burn on October 19, 2022. The prescribed burn was conducted pursuant to the Burn Plan which was reviewed and implemented by multiple agency personnel who all met rigorous standards set by the Forest Service Fire & Aviation Qualification Guide. The Burn Plan is consistent with Forest Service policy and regulations. The Ignition Authorization was signed by the appropriate Forest Service Agency Administrator. Moreover, Burn Boss Snodgrass was at all times acting within his authority as a Forest Service employee and complying with the Burn Plan. He did not act outside of this

/////

DECLARATION OF SALLY CHRISTENSEN IN SUPPORT OF                    Page **6** of **7**
DEFENDANT'S MOTION TO DISMISS

authority or inconsistent with the duly authorized Burn Plan, let alone recklessly. The actions he took that day were both reasonable and necessary in the performance of his job.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 10th day of May 2024

_/s/ Sally Christensen_
**SALLY CHRISTENSEN**